**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**WEST PALM BEACH DIVISION**
**www.flsb.uscourts.gov**

IN RE:                                                                              CASE NO.: 23-16141 MAM
                                                                                         CHAPTER 11
PARAMETRIC SOLUTIONS, INC.
      Debtor.
_____/

## DISCLOSURE STATEMENT FOR PARAMETRIC SOLUTIONS, INC.

                    **KELLEY KAPLAN & ELLER, P.L.**
                    Attorneys for Debtor in Possession
                    1665 Palm Beach Lakes Blvd.
                    The Forum - Suite 1000
                    West Palm Beach, Florida 33401
                    Telephone:  (561) 491-1200
                    Facsimile:   (561) 684-3773
                    bankruptcy@kelleylawoffice.com

      By:     /s/*Craig I. Kelley*_____
                  Craig I. Kelley, Esquire
                  Florida Bar No.: 782203

## TABLE OF CONTENTS

PAGE

INTRODUCTION .................................................................................................................. 1

I. DEFINITIONS ................................................................................................................. 3

II. PRE-PETITION EVENTS CAUSING NEED FOR REORGANIZATION .......................... 3

III. POST-PETITION EVENTS ............................................................................................. 4

IV. FINANCIAL INFORMATION .......................................................................................... 5

V. VOIDABLE TRANSFERS AND PREFERENCE ANALYSIS .............................................. 5

VI. OBJECTIONS TO CLAIMS ............................................................................................. 6

VII. MEANS OF EFFECTUATING PLAN AND RISK ANALYSIS ......................................... 6

VIII. CLAIMS AND THEIR TREATMENT UNDER THE PLAN: ............................................ 7

IX. POST-CONFIRMATION CONTROL OF THE DEBTOR ..................................................... 7

X. EXECUTORY CONTRACTS AND UNEXPIRED LEASES ............................................... 10

XI. LIQUIDATION ANALYSIS ........................................................................................... 10

XII. CONFIRMATION REQUEST ....................................................................................... 11

XIII. FEASIBILITY AND BEST INTEREST TEST ............................................................... 12

XIV. RISK ANALYSIS ....................................................................................................... 12

XV. MISCELLANEOUS PROVISIONS ................................................................................ 12

XVI. CONCLUSION ........................................................................................................... 14

EXHIBITS:

        EXHIBIT "A" List of Creditors
        EXHIBIT "B" Liquidation Analysis
        EXHIBIT "C" Schedule "A/B" of Petition
        EXHIBIT "D" Monthly DIP Reports Summaries
        EXHIBIT "E" Cash Flow Projections

The Debtor in Possession, **PARAMETRIC SOLUTIONS, INC.** (hereinafter "Debtor") submits its Disclosure Statement (hereinafter referred to as "Disclosure Statement") to its Creditors and other parties in interest.  A hearing on confirmation of the attached Plan is scheduled before the Court on _____.  The approval of the Disclosure Statement is not tantamount to a decision by the Court on the merits of the Plan.

## INTRODUCTION

This Disclosure Statement is submitted pursuant to the requirement imposed on the proponent of a Plan of Reorganization by 11 U.S.C. Section 1125.  The purpose is to disclose information deemed to be material, important, and necessary for the Creditors to arrive at a reasonably informed decision in exercising their right, or to vote for acceptance or rejection of the Plan of Reorganization (hereinafter referred to as "the Plan").  This Disclosure Statement should be read in conjunction with the accompanying Plan of Reorganization.  The Plan is a legally binding document once it is approved by the Court and should be read in its entirety.  Accordingly, creditors may wish to consult with their own attorney to understand the Plan more fully.

On August 3, 2023, the Debtor in Possession, **PARAMETRIC SOLUTIONS, INC.** filed a voluntary Petition for Reorganization under Chapter 11 in the United States Bankruptcy Code, 11 U.S.C., Section 101 *et seq.*, ("the Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of Florida (the "Bankruptcy Court"). **PARAMETRIC SOLUTIONS, INC.** has continued to operate its personal and business affairs as the Debtor in Possession pursuant to Section 1108 of the Bankruptcy Code.

THE FINANCIAL INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT WAS PREPARED BY THE DEBTOR, UNLESS SPECIFICALLY STATED TO BE FROM OTHER SOURCES.  NO REPRESENTATIONS, OTHER THAN THOSE SET

1

FORTH HEREIN, CONCERNING THE DEBTOR, PARTICULARLY AS TO FUTURE BUSINESS OPERATIONS OR VALUE OF THEIR PROPERTY, IS AUTHORIZED OR WARRANTED BY THE DEBTOR.  THE READER SHOULD NOT RELY ON ANY ORAL OR OUTSIDE REPRESENTATION BY ANY AGENT OF THE DEBTOR IN DECIDING TO VOTE FOR OR AGAINST THE PLAN.  ANY REPRESENTATIONS OR INDUCEMENTS MADE TO SECURE YOUR ACCEPTANCE WHICH ARE OTHER THAN THOSE CONTAINED IN THIS STATEMENT SHOULD NOT BE RELIED UPON BY YOU IN ARRIVING AT YOUR DECISION, AND SUCH OTHER ADDITIONAL REPRESENTATIONS AND INDUCEMENTS SHOULD BE REPORTED TO COUNSEL FOR THE DEBTOR, WHO IN TURN SHALL DELIVER SUCH INFORMATION TO THE UNITED STATES TRUSTEE FOR SUCH ACTION AS MAY BE DEEMED APPROPRIATE.

Projections or results of future operations are based on Debtor's best estimates in light of current market conditions, past experience, analysis of general economic conditions, and other estimates which will bear on the results.

You are urged to carefully read the contents of this statement before making your decision to accept or reject the Plan.  Particular attention should be directed to the provisions of the Plan affecting or impairing your rights as they presently exist.  The terms used herein have the same meaning as in the Plan unless the context hereof requires otherwise.

Creditors may vote on the Plan by filling out and mailing the accompanying ballot form to the Bankruptcy Court.  Your ballot must be filed on or before _____,    in order to be considered and counted.  As a Creditor, your vote is very important. *In order for the Plan to be accepted, of the ballots or votes cast, Creditors that hold at least 2/3's in amount and more than 1/2 in number of the allowed claims of impaired classes must accept the Plan.*  You

are, therefore, urged to fill in, date, sign and promptly mail the enclosed ballot which has been furnished to you. Please be sure to properly complete the form and legibly identify the name of the Claimant or interest holder. You are advised that the Debtor may be afforded the right under the Bankruptcy Code to have the Plan confirmed over the objections of dissenting Creditors consistent with the limitations set forth in the Bankruptcy Code, as further discussed below.

## I.　DEFINITIONS

The following phrases, as used hereinafter, shall have the following meanings:

All definitions in the Plan of Reorganization are incorporated herein.

<u>Court</u> -　Shall mean the United States Bankruptcy Court or the United States District Court, whichever is appropriate, implementing the provisions of the Bankruptcy Code in these proceedings.

<u>Creditor</u> -　Shall mean the holder of an Allowed Claim.

<u>Debtor's</u>

<u>Property</u> -　Shall mean all of the Debtor's property, as defined in Section 541 of the Bankruptcy Code.

<u>Plan</u> -　Shall mean the Chapter 11 Plan and any other subsequent amendments or modifications.

## II.　PRE-PETITION EVENTS CAUSING NEED FOR REORGANIZATION

The Debtor is a for profit corporation organized under the laws of the State of Florida. The Debtor is an engineering development and production company, providing engineering, manufacturing, and production services. The Debtor's primary business office is in Jupiter, Florida and the Debtor's primary customer is Pratt & Whitney.

The Debtor's financial issues began in 2019 when Pratt & Whitney internal issues resulted in PSI's work betting drastically cut and PSI's workforce dropped nearly 100 heads. This reduction in PSI's business size negatively affected some of the financial metrics used as covenants for its loan package with Bank of America, the largest creditor in this case. At this

3

time, PSI had outstanding with Bank of America $4,000,000.00 in equipment loans, a $10,000,000.00 Line of Credit and a $4,000,000.00 term loan. A related non-Debtor entity also had an outstanding mortgage loan due to Bank of America. The Debtor never missed a payment on the loans, but missed a financial metric covenant. As a result of the technical default, Bank of America informed the Debtor that it desired to end its relationship with PSI.

In September 2020, the Debtor received notice that the Department of Justice was investigating an antitrust case involving the Debtor, among others, including Pratt & Whitney, related to hiring practices amongst a group of companies. During this time, the Debtor continued to work with Bank of America to reduce its obligations. By the 1st quarter of 2022, the Debtor had eliminated $1,000,000.00 in equipment loans and continued to pay down the term loan, reducing its overall obligations due to Bank of America to about $4,000,000.00. Unfortunately, the situation with the Department of Justice was not as trivial as initially thought in 2020, and in 2022 one of the owners was indicted. As soon as that happened, various civil lawsuits began being filed, mirroring the indictment but naming the Debtor. This caused the Debtor to incur significant legal expenses which further weakened the company's finances.

In 2023 the criminal case was dismissed, but the civil lawsuit continued. In April 2023, Bank of America gave the Debtor a deadline to refinance the remaining loan balances. Unfortunately, the Debtor was unable to refinance the loans. At this point with the civil lawsuits still in play, legal fees mounting, and the debt to Bank of America coming due, the Debtor decided the best course of action for it and its 135 employees is to seek relief through Chapter 11.

### III. POST-PETITION EVENTS

With regard to the civil lawsuit discussed above, the Debtor is in the advanced stages of preparing a confidential settlement agreement, subject to approval of the court, which would

include eventual dismissal with prejudice. As such, the Debtor does not anticipate a distribution to that Consolidated Class Action class of creditors.

Significantly, post-petition, the Debtor has been advised by its largest customer that it will be receiving significantly more work. Although this is welcome news, with more work comes the need for additional employees. An additional challenge faced by this Debtor is that this customer's payment terms are seventy-five (75) days, meaning that payment on a project invoiced in the on February 1, 2024, would not be due until April 15, 2024, and this situation is what often causes the Debtor to be a in cash negative situation. In other words, income received in any given month is for work completed at least 2 ½ months prior, if not longer due to the fact that an invoice will not be generated the moment a project is completed. Also, the Debtor has to float the expense relative to that particular job from its own cash reserves.

The Debtor believes this additional work is integral to this bankruptcy reorganization. To this end, the shareholders have committed to a $1,000,000.00 loan to provide the working capital needed to fund this new work. A separate Motion for Post-Petition Financing shall be filed. The Debtor anticipates adding five (5) new employees over a six (6) month period. The projections attached hereto show that this working capital is indeed necessary to fund the new employees and operating deficits until new income is received from this additional work.

## IV. FINANCIAL INFORMATION

The source of the financial information for this Disclosure Statement and accompanying Plan is from reports and financial statements of the Debtor, Debtor in Possession Reports, the Debtor and the Debtor's financial professionals. The aforementioned information has been compiled through the present.

## V. VOIDABLE TRANSFERS AND PREFERENCE ANALYSIS

There are currently no known or existing voidable transfers that the Debtor has been a

party to within the year prior to Bankruptcy. Any other payments made during the preference period were made in the ordinary course of the Debtor's operations.

## VI. OBJECTIONS TO CLAIMS

Pursuant to the Plan, the Debtor may object to any scheduled claim or Proof of Claim filed against the Debtor. Such an objection shall preclude the consideration of any claim as "allowed" for the purposes of timely distribution in accordance with the Plan. Any objections by the Debtor have been, or will be, filed with the Bankruptcy Court under separate pleading.

The Debtor is presently reviewing Proofs of Claims that have been filed to determine the propriety of filing claims objections and have determined that some objections will be filed during the Disclosure Statement approval and/or Plan confirmation process. A list of all creditors and claims, including claims that are indicated as disputed, is attached hereto and made a part hereof as **Exhibit "A"**. The List of Creditors attached as **Exhibit "A"** sets forth the nature and grounds for any disputed claims. The timing of the Objections will not harm or prejudice any interested parties, nor will it delay the administration of this case. In the event that a creditor files a ballot with an objection pending, that creditor will need approval of this Court to have its ballot be tabulated.

## VII. MEANS OF EFFECTUATING PLAN AND RISK ANALYSIS

The Debtor believes that the Plan of Reorganization provides the best value for the creditors' claims and is in their best interest. Attached hereto as **Exhibit "A"**, is a table showing the claims against the Debtor in each classification. Attached hereto as **Exhibit "E"** are cash flow Projections setting forth a projected budget of the Debtor for the five (5) year term of the Plan.

The Debtor believes that the risk of non-payment of the percentage distribution to the

unsecured creditors in the Chapter 11 is greatly outweighed by the more substantial risk of non-payment should this Bankruptcy be converted to a Chapter 7 Liquidation, wherein the unsecured creditors would receive a distribution of 0%.

## VIII. CLAIMS AND THEIR TREATMENT UNDER THE PLAN:

A. **Administrative Claims:**

The administrative claimants include the Debtor's attorney, special counsel approved by this Court and the Office of the U.S. Trustee. Payment of the administrative claims for the Debtor's counsel is subject to set off for pre- and post-petition retainers, as well as approval by the Court of very detailed fee applications. The scheduling Order for Confirmation will set forth a deadline for the filing of all administrative claims, which will be paid on or before confirmation. All allowed Administrative Claims of the type specified in 11 U.S.C. Section 507(a)(1) shall be paid only upon approval of this Court after proper Applications are filed and an Order of this Court is entered.  There shall be sufficient funds to pay all such claims in the trust account of Debtor's counsel at least seven (7) days before the confirmation hearing. The foregoing is a condition precedent to the confirmation of the Plan.

B. **Classification Of Other Creditor's Claims**

1. **Class One (Department of the Treasury – Internal Revenue Service)**:  This class consists of The Department of the Treasury - Internal Revenue Service's priority claim (Claim #6) in the amount of $92,117.65.  This claim shall be paid in equal monthly installments beginning on the effective date of the Plan at 5% interest and shall be paid over a period ending not later than five (5) years after the date of the order for relief (which is 36 months after the projected Effective Date) in an amount of $1,992.91 per month in conformance with 11 U.S.C. 1129(a)(9)(c).

2.  **Class Two (Bank of America)**: The secured claim of Bank of America in the amount of $2,380,498.07 shall be paid at the contract rate of interest over 60 months at a rate of $43,403.84 per month, commencing on the Effective Date and continuing on the 15th day of each calendar month thereafter until paid in full. There shall be no prepayment penalty if the Debtor is able to pay the secured portion of the claim sooner than set forth herein. All remaining terms of the loan documents shall remain in effect. This claim is impaired.

3.  **Class Three (Bank of America):** The secured claim of Bank of America in the amount of $620,603.50 shall be paid at the contract rate of interest over 60 months at a rate of $11,700.16 per month, commencing on the Effective Date and continuing on the 15th day of each calendar month thereafter until paid in full. There shall be no prepayment penalty if the Debtor is able to pay the claim sooner than set forth herein. All remaining terms of the loan documents shall remain in effect. This claim is impaired.

4.  **Class Four (ADP):** This claim is for a Repayment Agreement for Employer Social Security Tax Deferrals under the CARES Act in the amount of $100,000.00, which the Debtor maintains is a priority claim. This claim shall be paid through the plan over 60 months at a rate of $1,666.67 per month, commencing on the Effective Date and continuing until paid in full. There shall be no prepayment penalty if the Debtor is able to pay the claim sooner than set forth herein. This claim is impaired.

5.  **Class Five (NRNS Acquisition Reynolds, LLC):** This claim is filed by the landlord for pas due CAM for a period of 2018-2022 in the amount of $211,986.27 due to a CAM reconciliation review. As set forth within this Plan, the Debtor intends to assume the Lease Agreement dated May 1, 2017 as amended by the First Amendment to Lease dated August 11, 2017 and the Second Amendment to Lease dated March 23, 2023. The Debtor and NRNS

Acquisition Reynolds are in the process of negotiating a repayment arrangement for the past due CAM which will be memorialized in an Amended Plan or Plan Confirmation Order. This claim is impaired.

6.  **Class Six (Consolidated Class Action Plaintiffs):** This class consists of the Consolidated Class Action Plaintiffs in thirty lawsuits consolidated into a single class action pending in District Court in Connecticut. The Debtor is in the advanced stages of preparing a confidential settlement agreement, subject to approval of the court, which would include eventual dismissal with prejudice. As such, the Debtor does not anticipate a distribution to that Consolidated Class Action class of creditors.

7.  **Class Seven (Convenience Class of Unsecured Creditors):** This class consists of general unsecured creditors that have claims of $2,500.00 or less subject to any Objections that are filed and sustained by the Court. These claims shall be paid at 50% of the claim amount on the Effective Date. These creditors are listed on Exhibit "A" to the Disclosure Statement. These claims are impaired.

8.  **Class Eight (General Unsecured Claims):** The general unsecured claims prior to the filing of any objections total the amount of $2,954,691.55, which will be paid over the five (5) year term of the Plan at the rate of $1,000.00 per month on a pro-rata basis. The payments will commence on the Effective Date of the Plan. The dividend to this class of creditors is subject to change upon the determination of objections to claims. To the extent that the Debtor is successful or unsuccessful in any or all of the proposed Objections, then the dividend and distribution to each individual creditor will be adjusted accordingly. These claims are impaired.

9.  **Class Nine (Equity):** There shall be no distribution to the equity holders of the Debtor's under the confirmed Plan and no dividends to this class of claimants. The equity

member shall retain his currently held equity interest in the Debtor. This claim is impaired.

## IX. POST-CONFIRMATION CONTROL OF THE DEBTOR

9.1 The Debtor shall continue to be managed by the current management team of David Olsen, David Cusano, Joel Haas, Daryl Michaelian and Gary Prus, who are also the shareholders.

## X. EXECUTORY CONTRACTS AND UNEXPIRED LEASES

10.1 Any and all Executory Contracts and unexpired leases of the Debtor not expressly assumed within the Plan, not assumed prior to the Confirmation Date, or as of the Confirmation Date, or the subject of pending applications to assume, shall be deemed rejected. Contracts and Leases will be assumed on the Effective Date.

10.2 Any claim for a rejected contract or lease shall be paid as a General Unsecured Claim by agreement, or upon determination by the Court, to the extent that such claims are allowed.

10.3 The Debtor intends to assume the following leases:

NRNS Acquisition Reynolds, LLC for the lease of the office space at 1061 E. Indiantown Road

PSI Property Holdings, LLC for the lease of the office space at 900 E Indiantown Road Suite 200 Jupiter, FL 33477

## XI.     LIQUIDATION ANALYSIS

11.1 As with any Plan, an alternative would be a conversion of the Chapter 11 case to a Chapter 7 case, and subsequent liquidation of the Debtor's non-exempt assets by a duly appointed or elected Trustee. In the event of a liquidation under Chapter 7, the following is likely to occur: (a) an additional tier of administrative expenses entitled to priority over general Unsecured Claims under Section 507(a)(1) of the Bankruptcy Code would be incurred. Such administrative expenses would include Trustee's commissions and fees to the Trustee's

accountant, attorney's fees and other professionals likely to be retained for the purposes of liquidating the assets of the Debtor; and (b) substantially less than market value will be realized for the Debtor's property, as set forth in Schedule B of the Bankruptcy Petition filed in this case, a copy of which is attached hereto and made a part hereof as Composite **Exhibit "C"**. Due to the age of the Debtor's receivables, the Debtor maintains that a reasonable collection rate is 35% of the current receivables, or $1,019,369.50. Due to the uniqueness of much of the Debtor's equipment, the Debtor maintains that a liquidation sale of the assets would yield an aggregate price of $1,403,678.60. These calculations have been factored into the Liquidation Analysis, which is attached hereto as **Exhibit "B"**.

In a Chapter 7 liquidation, the secured assets of the Debtor would go back to secured creditors, thus, resulting in substantial unsecured deficiency claims that would be added to the class of General unsecured creditors. The remaining creditors would, therefore, have very limited or no resources from which to receive any payment on their claims.

Predicated upon the foregoing and under a comparison of Chapter 11 reorganization versus Chapter 7 liquidation, the Debtor believes that the Creditors will receive more under a Chapter 11 Plan than they would under a Chapter 7 proceeding. As evidenced by the Liquidation Analysis attached hereto as **Exhibit "B"**, in the hypothetical conversion to a Chapter 7, the unsecured creditors would receive $0.00.

The Court has previously set October 12, 2023 in this case as the claims bar date. All indebtedness scheduled by the Debtor as not disputed, contingent or unliquidated or any indebtedness set forth in a properly executed and timely filed Proof of Claim shall be deemed an allowed claim unless the same is objected to, and the objection thereto is sustained by the Court.

## XII.   CONFIRMATION REQUEST

12.1   The Debtor reserves the right, in the event that impaired classes reject the Plan of

Reorganization, or any amendments or modifications thereto, to seek confirmation of the Plan pursuant to 11 U.S.C. Section 1129(b), if the Court finds at a hearing on confirmation that the Plan does not discriminate unfairly and is fair and equitable with respect to each dissenting class. Furthermore, in order for the Plan to be confirmed, of the ballots or votes cast, Creditors that hold at least 2/3's in amount and more than 1/2 in number of the allowed claims of impaired classes must accept the Plan.

## XIII. FEASIBILITY AND BEST INTEREST TEST

13.1    The Debtor submits that the Plan is fair and reasonable in its treatment of the respective classes of claims in this case, and that it is in the best interests of all affected parties to approve the Plans treatment of the classes of claims.

**CREDITORS AND OTHER PARTIES IN INTEREST ARE URGED TO READ AND REVIEW THE FULL TEXT OF THE PLAN OF REORGANIZATION, AND ANY AMENDMENTS OR MODIFICATIONS THERETO, PRIOR TO VOTING ON WHETHER TO ACCEPT OR REJECT THE PLAN.**

## XIV. RISK ANALYSIS

As with any investment, there are risks associated with all Plans of Reorganization, and this matter is no exception. A possible risk includes the possibility of a loss or decrease of employment income. As with any similar situation, there is always the risk that the Debtor may not perform as forecasted, but the Debtor firmly believes that the projections for its future income and expenses are conservative and reasonable.

## XV.    MISCELLANEOUS PROVISIONS

A.    Notwithstanding any other provisions of the Plan of Reorganization, and any amendments or modifications thereto, any claim which is scheduled as disputed, contingent, or

unliquidated, or which is objected to in whole or in part on or before the date for distribution on account of such claim, shall not be paid in accordance with the provisions of the Plan of Reorganization until such claim has become Allowed Claim by a final Order. If allowed, the Claim shall be paid on the same terms as if there has been no dispute.

B. At any time <u>before</u> the confirmation date, the Debtor may amend the Plan so long as the Plan as amended meets the requirements of Sections 1122, 1123 and 1127 of the Bankruptcy Code. After the Debtor files an amendment with the Bankruptcy Court, the Plan, as amended, shall become the final Plan of Reorganization.

C. At any time <u>after</u> the confirmation date, and before substantial confirmation of the Plan, and any amendments or modifications thereto, the Debtor or the reorganized Debtor may modify the Plan so long as the Plan, as modified, meets the requirements of Sections 1122, 1123 and 1127 of the Bankruptcy Code. The Plan, as modified under this paragraph, shall become the final Plan of Reorganization subject to and upon approval by the Court.

D. After the confirmation date, the Debtor may, with approval of the Bankruptcy Court, and so long as it does not materially and adversely affect the interest of creditors, remedy any defect or omission, or reconcile any inconsistencies in the final Plan of Reorganization or in the Order of Confirmation, in such manner as may be necessary to carry out the purposes and effect of the final Plan of Reorganization.

E. Except as otherwise provided in the accompanying Plan, confirmation of the Plan shall be deemed to have discharged the Debtor pursuant to Section 1141(d)(1) of the Code, from any claim included in this proceeding that arose on or prior to the Confirmation Date, and any claim of a kind specified in Section 502(g), (h) or (I) of the Bankruptcy Code whether or not: (i) a proof of the claim is filed or deemed to be filed under Sections 501 and 1111(a) of the

13

Bankruptcy Code; (ii) such claim is allowed under Section 502 of the Bankruptcy Code; or (iii) the holder of such claim has accepted the Plan. The payments to be made pursuant to This Plan by the Debtor that have provided post-petition new value contributions and will continue to do so as set forth within the Plan and as necessary to fund their expenses, which shall be in full settlement and satisfaction of all claims against the Debtor's Confirmation of this Plan does not discharge any debt provided for in this Plan until the court grants a discharge after all actions required to be taken on or before the Effective Date have been done, or as otherwise provided in § 1141(d)(5) of the Code. If the Debtor is unable to meet the requirements of § 1141(d)(5) then it will seek to administratively close the case post-confirmation.

   F. <u>Quarterly Trustee Fees and Post Confirmation Reporting</u> - The Debtor is current in the payment of all quarterly fees to the U.S. Trustee to date. Pursuant to 28 U.S.C. Section 1930(a)(6), the Debtor shall pay to the U.S. Trustee's office all appropriate quarterly fees based upon post-petition disbursements until This case is closed by the entry of a final decree on the confirmed Plan. The Debtor shall file all required Monthly Operating Reports Post-confirmation and Post-Confirmation quarterly reports upon the effective Date through closure of the case.

## XVI. CONCLUSION

Under the Debtor's Plan of Reorganization, and any amendments or modifications thereto, all claimants of the Debtor will participate in some manner in the distribution to be made thereunder. The Debtor believes that the distributions contemplated in its Plan are fair and afford all Claimants and interest holders equitable treatment. Accordingly, the Debtor recommends that all claimants vote to **Accept** the Plan of Reorganization.

*THE REST OF THIS PAGE IS INTENTIONALLY LEFT BLANK*

This Disclosure Statement has been executed this 1st day of December 2023.

**PARAMETRIC SOLUTIONS, INC.**

**DEBTOR IN POSSESSION**

By: /s/ David Cusano
      Director

KELLEY KAPLAN & ELLER, PLLC
Attorneys for Debtor in Possession
1665 Palm Beach Lakes Blvd.
The Forum - Suite 1000
West Palm Beach, FL 33401
Tel.: (561) 491-1200
Fax: (561) 684-3773
bankruptcy@kelleylawoffice.com

By: */s/ Craig I. Kelley*
      CRAIG I. KELLEY, ESQUIRE
      Florida Bar No.: 782203